Carol Lynn Finklehoffe. CA Bar No. 220309
LIPCON MARGULIES ALSINA & WINKLEMAN
One Biscayne Tower, Suite 1776
Miami, FL 33131
Tel: 305-373-3016
Fax: 305-373-6204
Email: cfinklehoffe@lipcon.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HEINZER, and BARBARA HEINZER, individually and on behalf of all similarly situated, Class Plaintiffs,<br><br>Plaintiffs,<br><br>vs.<br><br>PRINCESS CRUISE LINES, LTD., a corporation for profit,<br><br>Defendant. | CASE NO.:<br><br>**PLAINTIFFS' CLASS ACTION AND INDIVIDUAL COMPLAINT AND DEMAND FOR JURY TRIAL** |

## PLAINTIFFS' CLASS ACTION AND INDIVIDUAL
## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, JAMES HEINZER, and BARBARA HEINZER, bring this class action, individually and on behalf of all similarly situated passengers on the *Ruby Princess*, and hereby sue Defendant PRINCESS CRUISE LINES, LTD. (hereinafter "PRINCESS"), a for profit corporation, and for good cause alleges:

## THE PARTIES AND JURISDICTION

1. Plaintiff, JAMES HEINZER, is sui juris, is a resident of California and citizen of the United States.

2. Plaintiff, BARBARA HEINZER, is sui juris, is a resident of California

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

and citizen of the United States.

3.     At all times material, Defendant PRINCESS is incorporated in Bermuda, with its worldwide headquarters, principal address and principal place of business located in the County of Los Angeles, California.

4.     The matter in controversy exceeds the required amount, exclusive of interest and costs, and is a class action brought under this Honorable Court's jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the event that class status is not certified, then this matter is brought under the admiralty and maritime jurisdiction of this Honorable Court.

5.     This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333, because Defendant PRINCESS unilaterally inserts a forum selection clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this federal district and division,* as opposed to any other place in the world.

6.     Defendant PRINCESS, at all times material hereto, personally or through an agent:

    a.     Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.     Was engaged in substantial activity within this state;

    c.     Operated vessels in the waters of this state;

    d.     Purposefully availed themselves of the benefits of conducting activities in California by purposefully directing their activities toward the state, thereby obtaining the benefits and protections of the state's laws;

    e.     The acts of the Defendant PRINCESS set out in this Complaint occurred in whole or in part in this state and/or county;

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

2

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

f.     The cruise line ticket for the Plaintiffs requires that suit be brought in this Court against the named Defendant PRINCESS in this action.

7.     At all times material, Defendant PRINCESS was and is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports throughout the world including, Los Angeles, California, San, Francisco, California, and Sydney, Australia.

8.     At all times material, Defendant PRINCESS derived substantial revenue from cruises originating and terminating in various ports throughout the world including, Los Angeles, California, San, Francisco, California, and Sydney, Australia.

9.     At all times material, Defendant PRINCESS operated, managed, maintained, supervised, chartered, and/or controlled a large commercial vessel named *Ruby Princess* (commonly referred to as "the subject vessel").

10.     At all times material, Defendant PRINCESS transported fare-paying passengers on cruises aboard its vessel *Ruby Princess*.

11.     This action is an action under general maritime law and the laws of California, as applicable.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12.     This Class Action lawsuit involves Defendant's (a) knowing and intentional decision to proceed with a 14-day cruise on March 8, 2020, knowing at least one of its passengers from the prior voyage had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) knowing and intentional decision to not quarantine passengers knowing passengers on the prior voyage tested positive for COVID-19 and/or knowing passengers on the March 8, 2020 cruise were

experiencing symptoms of COVID-19. In so doing, Defendant subjected over 2,700 passengers to the highly contagious coronavirus, and exposing passengers to actual risk of immediate physical injury and death.

**Factual Allegations Surrounding the Cruise Industry and the Coronavirus**

13. In the recent months, there has been a worldwide outbreak of a new virus, the coronavirus, also known as COVID-19. The virus originated in China, and quickly spread throughout Asia, Europe, and most recently, North America.

14. The dangerous conditions associated with COVID-19 include its manifestations – severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock and/or multi-organ failure[1] – and/or its symptoms – fever, dry cough, and/or shortness of breath[2] – as well as the high fatality rate associated with contracting the virus.[3] The dangerous conditions associated with COVID-19 also include its extreme contagiousness. For example, a person with COVID-19 infects, on average, another 2.5 people, and COVID-19 is therefore more contagious than Ebola or Influenza.[4]

15. There have been over one million cases worldwide and over one hundred thousand deaths as a result of the coronavirus. Those fatalities have largely been amongst the elderly population, and those with underling medical complications.

---

[1] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order*, https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

[2] *See* Mayo Clinic, *Symptoms and Causes*, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last accessed April 6, 2020); *see also* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

[3] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (identifying a 3.6% global fatality rate); Journal of the American Medical Association, *Case-Fatality Rate and Characteristics of Patients Dying in relation to COVID-19 in Italy*, https://www.jamanetwork.com/journals/jama/fullarticle/2763667 (identifying a 7.2% and 2.3% fatality rate in Italy and China, respectively).

[4] Popular Science, *COVID-19 Contagiousness*, https://www.popsci.com/story/health/how-diseases-spread/.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

16.    Outlined below is a timeline of events relevant to this Class Action lawsuit against Defendant. This timeline supports Defendant having actual knowledge of the dangerous conditions and/or explosive contagiousness associated with COVID-19 at the time the first Class Member contracted COVID-19:

a.    <u>December 31, 2019</u> – The local government in Wuhan, China, confirmed with the World Health Organization (hereinafter "WHO") that local health authorities in Wuhan were treating an influx of dozens of patients with what appeared to be novel cases of pneumonia with an unknown cause.

b.    <u>January 5-7, 2020</u> – China announced that the novel pneumonia cases in Wuhan were not caused by severe acute respiratory syndrome (hereinafter "SARS") or middle-east respiratory syndrome (hereinafter "MERS") – but COVID-19 – which belongs to the highly-contagious family of coronaviruses, including SARS and MERS.

c.    <u>January 11, 2020</u> – The Wuhan Municipal Health Commission announced the first death caused by COVID-19.

d.    <u>January 20, 2020</u> – A situation report published by the WHO confirmed COVID-19 cases outside of mainland China in Thailand, Japan and South Korea, which the WHO believed to have been exported from Wuhan, China. The situation report also identified 282 positive COVID-19 diagnoses worldwide with 278 of those positive cases within China.

e.    <u>January 23, 2020</u> – Chinese authorities take the <u>unprecedented</u> measure of closing off Wuhan – a city of over 11,000,000 people – to stop the spread of COVID-19.

f.    <u>January 24, 2020</u> – The United States Coast Guard issued a Maritime Safety Information Bulletin (MSIB) on January 24, 2020, the entitled *Novel Coronavirus Precautions*, directed to all vessel owner and operators[5].   The MSIB alerted shipowners and operators of the outbreak, provided guidance and mandated that they report sick or deceased crew/passengers to the Center for Disease Control (hereinafter the "CDC").

---

[5] *See*, https://www.maritimedelriv.com/storage/app/media/Agencies/USCG/USCG_MSIB/USHQ_MSIB_01
_20_MTS_Precautions.pdf

g.     <u>January 24, 2020</u> – the Department of Transportation Maritime Administration (hereinafter "MARAD") issued a Maritime Security Communication with Industry (hereinafter "MSCI") advisory entitled *2020-002A-Global-Novel Coronavirus Outbreak*.[6]

h.     <u>January 30, 2020</u> – WHO declared COVID-19 a "global health emergency" – recognizing that COVID-19 posed a risk beyond China. The U.S. Department of State issued a Level 4 (highest level) travel advisory as it related to U.S. citizens who planned to travel to China.[7]

i.     <u>January 31, 2020</u> – MARAD issued another MSCI advisory entitled *2020-0004-Global-Novel Coronavirus Outbreak*[8] again alerting shipowners and operators, such as the Defendant PRINCESS, to coronavirus outbreak and reporting requirements to the CDC.  MARAD issued a follow-up MSCI advisory on February 8, 2020 entitled *2020-0005-Global-Novel Coronavirus Outbreak*.[9]

j.     <u>February 2, 2020</u> – China reports that the death toll from COVID-19 in mainland China (361) exceeded the death toll in mainland China from the SARS outbreak in the early 2000s (349).

k.     <u>February 5, 2020</u> – Chinese officials announced that nearly 500 people in mainland China have died as a result of COVID-19.

l.     <u>February 5, 2020</u> (*Diamond Princess*) – Passengers aboard the *Diamond Princess* near Yokohama, Japan began a two-week quarantine after nine (9) passengers and one (1) crewmember tested positive for COVID-19 while aboard the vessel. See *infra* for further details.

m.     On <u>February 13, 2020</u> – The CDC published the Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections. See *infra* for further details.

---

[6] *See,*  https://www.maritime.dot.gov/content/2020-002a-global-novel-coronavirus-outbreak

[7] Ryan Goodman and Danielle Schulkin, *Timeline of the Coronavirus Pandemic and U.S. Response*, Just Security, April 13, 2020, https://www.justsecurity.org/69650/timeline-of-the-coronavirus-pandemic-and-u-s-response/.

[8] *See*, https://www.maritime.dot.gov/content/2020-004-global-novel-coronavirus-outbreak

[9] *See*, https://www.maritime.dot.gov/content/2020-005-global-novel-coronavirus-outbreak

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

n.   February 21, 2020 (*Grand Princess*) – The *Grand Princess* embarks on a voyage despite its cruise operator, Princess, having knowledge that at least one of its passengers from a prior voyage who disembarked the *Grand Princess* on February 21, 2020 had symptoms of COVID-19 while aboard the vessel. See *infra* for further details.

o.   February 19-25, 2020 (*Diamond Princess*) – Following the two-week quarantine aboard the *Diamond Princess*, Japanese officials announced that of the 3,711 passengers aboard the vessel, over 700 tested positive for COVID-19 (18.8%) – the largest cluster of positive COVID-19 cases outside of mainland China at that time. See *infra* for further details.

p.   March 8, 2020 – Spain (a country which boarders France to the south) reported 589 COVID-19 cases and 17 COVID-19 related deaths.

q.   March 9, 2020 (*Grand Princess*) – The *Grand Princess* docked in Oakland, California and its passengers were held in quarantine. Of the 3,553 passengers onboard, 21 of the 46 first round of passengers tested for COVID-19 tested positive (45%). Many passengers ultimately refused COVID-19 testing so that they could disembark and travel to the safety of their homes quicker.

r.   March 12, 2020 – Spain reported over 3,000 COVID-19 cases and 84 COVID-19 related deaths.

s.   March 14, 2020 – Spain ordered a nation-wide lockdown, banning all intra-country travel except travel to procure food, medicine and travel related to essential business operations.

17.   The CDC's February 13, 2020, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections aboard ships, like the *Ruby Princess*. *See* the Memorandums cited at footnote 1.

18.   In view of the fact that Dr. Grant Tarling, the Chief Medical Officer of Defendant's parent company Carnival Corporation, stated that Defendant has "deep

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

partnerships with… the U.S. Centers for Disease Control and Prevention,"[10] Defendant knew and/or should have been aware of this Memorandum, including, but not limited to, the dangerous conditions and/or explosive contagiousness associated with COVID-19, and it's all but certain presence aboard the *Ruby Princess* at that time.

19.    This Memorandum provided cruise vessel operators, like Defendant, with numerous helpful considerations to assist in detecting and preventing the spread of COVID-19 amongst its crewmembers, passengers and its vessels at large, some of which include:

- "Early detection, prevention, and control of Coronavirus Disease 2019 (COVID-19) on ships **is important** to protect the health of travelers on ships and to avoid transmission of the virus by disembarking passengers and crew members who are suspected of having COVID-19";

- "Identifying and isolating passengers and crew with possible symptoms of COVID-19 as soon as possible **is needed** to minimize transmission of this virus";

- "To reduce spread of respiratory infections including COVID-19, CDC **recommends** that ships encourage crew members and passengers to

  - Postpone travel when sick

  - Watch their health

  - Self-isolate and inform the onboard medical center immediately if they develop a fever (100.4ºF / 38ºC or higher), begin to feel feverish, or develop other signs or symptoms of sickness

  - Use respiratory, cough, and hand hygiene

---

[10] This information was posted on PRINCESS' website in a video regarding Enhanced Boarding Procedures due to COVID-19 on February 29, 2020. *See* Princess Cruise Lines, Ltd., *Enhanced Boarding Procedures and Onboard Preventative Measures*, PRINCESS CRUISE LINES, LTD., February 29, 2020, https://www.princess.com/news/notices_and_advisories/notices/dr-grant-tarling-chief-medical-officer.html (last visited April 22, 2020).

- Advise passengers and crew of the importance of covering coughs and sneezes with a tissue. Dispose used tissues immediately in a disposable container (e.g., plastic bag) or a washable trash can.

- Remind passengers and crew members to wash their hands often with soap and water, especially after coughing or sneezing. If soap and water are not available, they can use a hand sanitizer containing 60%-95% alcohol)"

- "**Deny boarding of a passenger or crew member** who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation";

- "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 **should be** quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members **should** self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure";

- "**Isolate passengers or crew onboard** who are suspected of having COVID-19 infection in a single-occupancy cabin with the door closed until symptoms are improved."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

20.    According to Dr. Martin Cetron, the Director of the CDC's Division of Global Migration and Quarantine, cruise ships have a higher risk of infectious disease spread than arenas, theaters and restaurants.[11]

21.    Defendant and the cruise industry got an early warning of how easily the virus could spread on its massive ocean liners when the first cases emerged on the

[11] Taylor Dolven, Sarah Blaskey, Nicholas Nehamas, and Alex Harris, *COVID CRUISES: Cruise Ships Sailed on Despite the Coronavirus. Thousands of People Paid the Price*, MIAMI HERALD, April 23, 2020, https://www.miamiherald.com/news/business/tourism-cruises/article241640166.html (last visited April 23, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

*Diamond Princess*, also owned and operated by Defendant, in early February 2020 in Yokohama Harbor.   The outbreak began with ten cases, and rapidly multiplied to seven hundred cases, as a result of the flawed two week quarantine on the ship.

22.     Defendant and the cruise industry got another warning of how severe the virus could spread on cruise ships when the *Grand Princess*, also owned by Defendant, had a breakout in late February 2020 off the coast of California. Princess had knowledge that at least one of its passengers from a prior voyage who disembarked February 21, 2020, had symptoms of coronavirus, and yet it made the conscious decision to proceed with the voyage that began on February 21, 2020, with another three thousand passengers on an infected ship. Prior to boarding the February 21, 2020 voyage on the Grand Princess, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, let alone examined in any capacity. As a result of Princess' lackadaisical approach to the safety of passengers and crew, 103 passengers tested positive for the coronavirus and two people have died so far.

23.     The Center for Disease Control (CDC) issued a statement on February 18, 2020 that "the rate of new reports of positives new on board [the Diamond Princess], especially among those without symptoms, **highlights the high burden of infection on the ship and potential for ongoing risk**." Seven of the Diamond Princess' passengers died as a result of COVID-19.

24.     Defendant's Chief Medical Officer Dr. Grant Tarling took to the media in late February 2020 to reassure crew and future passengers "we've learned from our recent experiences,' and the measures would in part 'enhance the cruising experience so it continues to be an exceptional and safe way to travel."[12]

---

[12] Duncan McNab, *Coronavirus Australia: Explosive Developments in Ruby Princess Cruise Ship Saga*, 7NEWS, April 5, 2020, https://7news.com.au/lifestyle/health-wellbeing/coronavirus-australia-explosive-developments-in-ruby-princess-cruise-ship-saga-c-957325 (last visited April 22, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

25.     On February 29, 2020, in a videotaped message regarding COVID-19, posted on PRINCESS' website and its YouTube page, Dr. Tarling stated "in light of the global spread of coronavirus" Defendant have updated its boarding procedures onboard all its ships, including "temperature checks of all boarding guests," and "conducting thorough passport review and verification ensure guests have not traveled within the past 14 days to countries where there is a travel restriction or health alert due to widespread coronavirus spread."[13] Yet, PRINCESS did not do such for the boarding of the March 8, 2020 *Ruby Princess* cruise.

26.     It would only stand to reason, that knowing of these prior traumatic outbreaks on another of its vessels less than a month prior to the subject voyage on the *Ruby Princess*, that Defendant PRINCESS would have learned to take all necessary precautions to keep its passengers, crew and the general public safe.  This likely would have meant that the voyage, in its entirety, would have been cancelled.  Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, Defendant PRINCESS set sail.  For this reason and those further stated herein, Plaintiffs and others similarly situated have contracted the coronavirus and/or are now at an actual risk of immediate physical injury and death proximately caused by Defendant's negligence.

### Factual Allegations Surrounding the Coronavirus
### Outbreak on the *Ruby Princess* Voyage

27.     On February 24, 2020, passengers embarked on the *Ruby Princess* in Sydney, Australia, which for some passengers would be a 26-night cruise with the *Ruby Princess* returning to Sydney, Australia on March 8, 2020.

28.     On or about February 19, 2020, Defendant became aware of at least one passenger showing symptoms of COVID-19 onboard the *Ruby Princess*, but

---

[13] Jacquie McNish, Rebecca Smith, Erin Ailworth, and Rachel Pannett, *Cruise Ships Set Sail Knowing the Deadly Risk to Passengers and Crew*, WSJ, May 1, 2020, https://www.wsj.com/articles/cruise-ships-set-sail-knowing-the-deadly-risk-to-passengers-and-crew-11588346502 (last visited May 4, 2020).

Defendant did not take any extra precautions.

29.     During the February 24, 2020 voyage on the *Ruby Princess*, 158 passengers on board became sick, with 13 registering high temperatures—a known symptom of COVID-19. Accordingly, this information would constitute a "hazardous condition" pursuant to 33 CFR § 160.216, and would have required Defendant to report this information pursuant to 42 CFR 71.1.

30.     When the *Ruby Princess* was arriving back to Sydney on March 8, 2020, nine passengers were tested for COVID-19. Yet, Defendant failed to inform passengers embarking on the March 8, 2020 *Ruby Princess* cruise that these passengers were experiencing symptoms of COVID-19, necessitating testing for such. At least two of these passengers tested positive for COVID-19 during the March 8, 2020 voyage on the *Ruby Princess*, which Defendant were aware of.

31.     On the morning of March 8, 2020, the *Ruby Princess* arrived back in Sydney, Australia from its previous voyage. Within just a few hours, PRINCESS allowed new passengers to board the ship without adequately sanitizing the *Ruby Princess*, including, but not limited to, incorporating UV lights into the filtration systems and/or antimicrobial sanitizing equipment. In addition, PRINCESS did not have a third-party indoor environmental professional verify that common use areas and surfaces of the vessel were reasonably safe for passengers and/or crewmembers.

32.     Before boarding the *Ruby Princess* on March 8, 2020, passengers contacted PRINCESS over their concerns of the vessel's safety surrounding the coronavirus. PRINCESS assured passengers its vessel was not affected by the coronavirus, was safe, and that there was no need for concern. In addition, PRINCESS instructed passengers that they would *not* be reimbursed if they cancelled their March 8, 2020 voyage on the *Ruby Princess*.

33.     Relying on PRINCESS' assurances, passengers embarked on the *Ruby Princess* on March 8, 2020 for a New Zealand cruise.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

34.     Defendant did not inform passengers that were scheduled to board the *Ruby Princess* on March 8, 2020, that passengers from the prior voyage had symptoms of COVID-19 and/or inform passengers that other passengers aboard the *Ruby Princess* had been exposed to and might be carrying COVID-19 and/or that passengers were at a significantly increased risk of exposure to COVID-19. If passengers were made aware of this significantly increased risk of exposure prior to boarding the ship in Sydney, Australia they would have never boarded the *Ruby Princess*, and/or never contracted COVID-19.

35.     In fact, before boarding the *Ruby Princess*, Defendant sent text messages to passengers, advising that boarding would be delayed and to leave the terminal and return after 5pm. However, Defendant failed to inform passengers that boarding was delayed due to testing for COVID-19 administered to passengers on the prior voyage showing symptoms for such. The following is a photograph of the text messages Defendant sent to passengers awaiting to board the *Ruby Princess* on March 8, 2020:



36.     Before boarding the *Ruby Princess*, PRINCESS failed to deny boarding to passengers and/or crewmembers who showed symptoms of the coronavirus and/or

travel history in China or other known exposure at the time of embarkation, including but not limited to, Japan, Italy, and South Korea. Defendant's actions and/or omissions were a direct violation of the CDC's Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019.

37.     During the boarding process on March 8, 2020, passengers were not questioned, nor medically examined, including, but not limited to, temperature taken, before PRINCESS allowed passengers onboard the *Ruby Princess*. This was a clear inconsistent action to PRINCESS guarantee that it would check boarding guest's temperatures made on PRINCESS' website on February 29, 2020. As a result, PRINCESS exposed Plaintiffs and others similarly situated to exposure of COVID-19 and/or to an actual risk of immediate physical injury and/or death.

38.     To make matters even worse, there was a group of passengers onboard the March 8, 2020 voyage on the *Ruby Princess*, who were also on the prior voyage, that were exposed to the passengers on the prior voyage that tested positive for COVID-19.

39.     During the voyage, as should have been anticipated, a coronavirus outbreak occurred on the *Ruby Princess*. The outbreak was considered so severe that the *Ruby Princess* was denied entry to ports-of-call due to how contagious, novel, and deadly the coronavirus is.

40.     On or about March 13, 2020, a passenger on the prior voyage who showed symptoms of COVID-19 and was tested for such when the *Ruby Princess* returned to port, tested positive for COVID-19.

41.     By March 14, 2020, five passengers developed symptoms of the coronavirus on board the *Ruby Princess*. Yet, Defendant took no action and did not inform passengers about their actual risk of exposure of COVID-19 and/or to an actual risk of immediate physical injury and/or death.

42.     On or about March 15, 2020, Defendant administered forms to

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

passengers, requesting information on whether the passenger had experienced a cough or fever. However, at no point did Defendant inform passengers that there were suspected cases of coronavirus on board the *Ruby Princess*. Had passengers been informed of the cases of coronavirus on board the *Ruby Princess*, they would have never boarded and/or disembarked the vessel at one of the various port-of-calls.

43.    On or about March 15, 2020, Australia announced it was closing its borders to cruise ships. Later that day, announcements were made that special arrangements were in place for the *Ruby Princess* as it had only been to New Zealand.

44.    On or about March 15, 2020, the *Ruby Princess* was in Napier, New Zealand, when the Defendant informed passengers the vessel would be heading back to Sydney, Australia earlier than planned due to weather issues. However, a crewmember onboard the *Ruby Princess* told 7NEWS that explanation was a sham.[14]

45.    A week after the *Ruby Princess* visited Napier, New Zealand, Dr. Rachel Eyra, a district medical officer in New Zealand, confirmed that one new case of COVID-19 was connected to the *Ruby Princess*, and requested that any local who had been in contact with *Ruby Princess* passengers for more than 15 minutes—and was symptomatic—to call their hotline.[15]

46.    At all times material, during the cruise on the *Ruby Princess*, passengers were allowed unfettered access to the pools, gym, and buffets, despite knowing passengers on the prior voyage tested positive for COVID-19 and passengers on the March 8, 2020 voyage had symptoms of COVID-19, which further put passengers at an actual risk of exposure to coronavirus. Defendant's actions and/or omissions were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus

---

[14]  Duncan McNab, *Coronavirus Australia: Explosive Developments in Ruby Princess Cruise Ship Saga*, 7NEWS, April 5, 2020, https://7news.com.au/lifestyle/health-wellbeing/coronavirus-australia-explosive-developments-in-ruby-princess-cruise-ship-saga-c-957325 (last visited April 22, 2020).

[15]  Pamela Williams, *Ruby Princess passengers in the dark*, FINANCIAL REVIEW, April 16, 2020, https://www.afr.com/policy/health-and-education/ruby-princess-passengers-in-the-dark-20200415-p54jyx (last visited April 22, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Disease 2019, revised on February 18, 2020.

47.    In regards to managing passengers and crew after exposure, the CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019 states:

> "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 should be quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members should self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure."[16]

48.    On or about March 16, 2020, Defendant advised the Australian Department of Agriculture, Water and the Environment that 128 passengers and/or crewmembers were showing symptoms of the coronavirus in the past 14 days. However, Defendant failed to inform passengers of such conditions and their actual risk of exposure to COVID-19.

49.    The next day, the NSW Health department of Australia sought more information, and requested passengers and/or crewmembers with COVID-19-like and/or flu-like symptoms be isolated, be given masks and gloves, and informing other passengers on board the *Ruby Princess* be informed. However, Defendant did not follow the NSW Health's recommendations, and continued with cruise as if there were no issues.

50.    On or about March 18, 2020, Defendant's physician on board the *Ruby Princess* advised the NSW Health that the vessel had two passengers with upper respiratory tract infections needing an ambulance on arrival and that 15 viral swabs had been taken from ill passengers, which had tested negative for the flu.

51.    This information prompted port authorities to deny the *Ruby Princess* permission to dock in Sydney, Australia. However, upon information and belief, a

---

[16] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

representative from Defendant and/or its parent company Carnival Corporation, contacted the port authorities to inform the ambulance was not requested due to COVID-19 concerns. Accordingly, the *Ruby Princess* was granted permission to dock in Sydney, Australia. One of the passengers who was transported by ambulance from the *Ruby Princess* to the hospital in Sydney, Australia, died five days later of COVID-19 complications.[17] This highlights the theme of deceiving conduct perpetuated by the Defendant.

52.     On or about March 18, 2020, passengers were still allowed unfettered access to public areas around the ship, and congregating in large groups as follows:



53.     On March 19, 2020, the *Ruby Princess* docked in Sydney, Australia, to allow for the disembarkation process of passengers. When passengers were instructed to leave their staterooms to meet at disembarkation areas aboard the vessel for further directions, Defendant did not direct passengers to distance themselves from other passengers, and did not provide masks or gloves to passengers, which further put passengers at an actual, heightened risk of exposure to the coronavirus.

---

[17] Matilda Boseley, *Criminal investigation launched into Ruby Princess cruise ship coronavirus disaster*, THE GUARDIAN, April 5, 2020, https://www.theguardian.com/world/2020/apr/05/criminal-investigation-launched-ruby-princess-cruise-ship-coronavirus-disaster (last visited April 22, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

54.    On March 20, 2020, Defendant provided an Advisory Updated to its passengers who sailed on the March 8, 2020 *Ruby Princess* cruise, informing those passengers that three guests and a crewmember on the subject cruise tested positive for COVID-19. Defendant admitted that all four had reported symptoms of COVID-19 **during** the cruise. The following is the update Defendant provided to passengers that had disembarked the *Ruby Princess* the day before:

> Updated Friday, 20 March 2020, 3:30PM
>
> **SYDNEY, Australia** — We are working closely with NSW Health authorities who advised that three guests and a crew member who travelled on Ruby Princess have tested positive for COVID-19.
>
> Please be advised that all four had reported flu-like symptoms during the cruise and, along with their stateroom occupants, were in

55.    On March 22, 2020, the NSW Health authorities sent Plaintiffs and other former passengers of the *Ruby Princess* a text message, warning of the following:

> "NSW Health has been advised that **several passengers on the Ruby Princess cruise ship that arrived in Sydney on Thursday 19 March 2020 have been diagnosed with COVID-19**.
>
> "These passengers were diagnosed after disembarking but **were likely infectious while on the ship**. As you have been identified as a passenger on this ship, you are considered a close contact. More information about being a close contact can be found at this link …"[18]

56.    As a result of Defendant's deceiving conduct, the Australian authorities have launched a criminal probe into the handling of the *Ruby Princess* ordeal mentioned above. The Australian police question Defendant transparency in contextualizing the true patient/crew health conditions relevant to COVID-19.

57.    If Plaintiffs and others similarly situated passengers had known that passengers from the *Ruby Princess'* prior voyage on February 24, 2020 had suffered from COVID-19, and/or that passengers exposed to COVID-19 on the prior voyage

---

[18] Pamela Williams, *Ruby Princess passengers in the dark*, FINANCIAL REVIEW, April 16, 2020, https://www.afr.com/policy/health-and-education/ruby-princess-passengers-in-the-dark-20200415-p54jyx (last visited April 22, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

had remained onboard the *Ruby Princess*, Plaintiffs and all others similarly situated would not have boarded and/or sailed on the March 8, 2020 roundtrip to New Zealand.

58.     As a result of Defendant's grossly negligent approach to the safety of the passengers on board the *Ruby Princess*, its passengers and crew aboard the *Ruby Princess* were at an actual risk of immediate physical injury and death.

59.     Consequently, thousands of passengers on the *Ruby Princess* were subjected to the risk of contracting the highly contagious coronavirus as a result of Defendant's failure to warn passengers at any time prior to boarding and/or while they were already onboard that there were other passengers with symptoms of the coronavirus, and Defendant's grossly negligent approach to the safety of the passengers.

60.     As a result of Defendant's actions and/or omissions, Plaintiffs and others similarly situated were consequently forced to quarantine for over two weeks, some of which had high fevers, dry coughs, shortness of breath, and a serious risk of imminent death– all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise and/or implemented reasonable policies and procedures to prevent the spread of the highly contagious coronavirus.

61.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff James Heinzer became infected, was diagnosed and treated for COVID-19 in an intensive care unit in a foreign country.

62.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff Barbara Heinzer became infected, was diagnosed and treated for COVID-19.

63.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiffs and all others similarly situated onboard the *Ruby Princess* have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in the Complaint, including, but not limited to,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

suffering, anguish, fright, horror, nervousness, grief, anxiety, worry shock, and were traumatized by the fear of developing COVID-19.

64. Defendant is fully aware of the impact this incident has had on passengers as PRINCESS' President, Jan Swartz, sent an email to former passengers that sailed on the March 8, 2020 *Ruby Princess* cruise, offering counseling services to former passengers:

**Care services**
Whether related to *Ruby Princess* or otherwise, the advent of the coronavirus has been a very difficult time for all involved and we want to support you as best we can. With this in mind, we would like to offer access to a counselling service. This is a standard courtesy service we provide to guests when circumstances warrant this.

If you would like to speak to a counsellor, we encourage you to contact our confidential counselling service:

USA & Canada: 877-841-1080
Other regions: +1 262 574 2528

You may also reach out to us via email at FamilyAssistance@HollandAmericaGroup.com (North America) or PCUK.Care@princesscruises.co.uk (UK) to be put in touch with our counselling service.

65. It is expected that Plaintiffs and all others similarly situated onboard the *Ruby Princess* will continue to suffer and will require medical services in the future. They have and will suffer medical expenses, lost earnings and earning capacity as a result.

66. Defendant's negligent misconduct was predicated on a profit motive because, simply put, cruise lines like Defendant make no money when passengers don't sail. Defendant's knowing, intentional and reckless conduct subjects Defendant to the imposition of punitive damages. This voyage set sail knowing it was a virtual certainty that there would be an outbreak, similar, if not identical, to those which PRINCESS' other vessels (*Diamond Princess* and *Grand Princess*) had already very publicly faced. This callous disregard for the safety and well-being of its passengers must be answered for.

67.     Each and all of the foregoing conditions, including but not limited to, the actual risk of exposure to the coronavirus, were known to Defendant prior to the time the *Ruby Princess* set for sail on its voyage on February 21, 2020, with James Heinzer and Barbara Heinzer, and all other passengers similarly situated. Defendant subjected over 2,000 passengers to the highly contagious coronavirus, and exposed passengers to actual risk of immediate physical injury and death due to its (a) knowing and intentional decision to proceed with a 14-day cruise on March 8, 2020, knowing at least one of its passengers from the prior voyage had symptoms of coronavirus; (b) knowing and intentional decision to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were  passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) knowing and intentional decision to not quarantine passengers knowing passengers on the prior voyage tested positive for COVID-19 and/or knowing passengers on the March 8, 2020 cruise were experiencing symptoms of COVID-19.

## CLASS ACTION ALLEGATIONS

68.     This action is brought by Plaintiffs on their own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the applicable numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements of the Federal Rules of Civil Procedure.

69.     The Class so represented by the Plaintiffs in this action, and of which Plaintiff is a member, consists of all passengers aboard the *Ruby Princess* cruises on February 24, 2020, and/or March 8, 2020.

70.     The class of passengers were subjected to severe distress both physical, psychological and emotional; endured pain and suffering, along with physical and emotional injury as a result of Defendant's negligence and/or gross negligence and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

intentional conduct.

71.     The exact number of members of the class is unknown at this time, but it is estimated that there are in excess of 2600 members. The class is so numerous that joinder of all members is impracticable, and the class action procedure is more practical, inclusive, and cost-efficient than numerous individual lawsuits on the same common questions of law and fact. Class Members are readily identifiable from information and records in PRINCESS' custody, control, or possession, and from records kept by the CDC and Department of Health and Human Services. This action satisfies the requirements of Rule 23(a)(1).

72.     There are common questions of law and fact that relate to and effect the rights of each member of the class and the relief sought is common to the entire class. The same misconduct on the part of Defendant caused the same or similar injury to each class member.  All class members seek damages under the general maritime law of the United States for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Negligence.  Accordingly, this action satisfies the requirement of Rule 23(a)(2).

73.     The claims of Plaintiff are typical of the claims of the class, in that the claims of all members of the class, including Plaintiff, depend upon a virtually identical showing of the acts and omissions of Defendant, giving rise to the right of Plaintiff to the relief sought herein. Defendant were at all times material hereto engaged in the same conduct to the detriment of the entire class of Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

74.     Plaintiff is the representative party for the class, and is able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiff are experienced and capable in the field of maritime claims for cruise ship passenger injury, including class actions,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

and have successfully represented claimants in other litigation of this nearly exact nature. Three of the attorneys designated as counsel for Plaintiff, Carol L. Finklehoffe, Jason R. Margulies (Florida Bar Board Certified in Admiralty and Maritime Law) and Michael A. Winkleman, will actively conduct and be responsible for Plaintiff's case herein. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

75.     This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy. In support of the foregoing, Plaintiff alleges that common issues predominate and can be determined on a class-wide basis regarding Defendant failure to exercise reasonable care under the circumstances, by *inter alia*, (a) deciding to proceed with a 14-day cruise on March 8, 2020, knowing at least one of its passengers from the prior voyage had symptoms of coronavirus; (b) deciding to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were  passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) deciding to not quarantine passengers knowing passengers on the prior voyage tested positive for COVID-19 and/or knowing passengers on the March 8, 2020 cruise were experiencing symptoms of COVID-19.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiff is not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Defendant in a single

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

forum, and individual actions by class members, many of whom are citizens of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

77.    PRINCESS' passenger ticket contract contains a provision which attempts to limit its passengers' right to file their claims against PRINCESS as a class action, but said provision is void because such an attempt by PRINCESS to limit its liability to passengers should be deemed null and void as Defendant acted intentionally[19] by exposing passengers to a highly contagious virus, which has no current confirmed vaccine nor effective treatment.

**COUNT I**
**NEGLIGENCE AGAINST DEFENDANT**

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 77, and alleges as follows:

78.    It was the duty of Defendant to provide Plaintiff and all others similarly situated with reasonable care under the circumstances.

79.    Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

80.    Plaintiff was injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

a.    Failure to use reasonable care to provide and maintain a safe voyage for James Heinzer and Barbara Heinzer and others similarly situated, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus, and when a prior passenger showed symptoms of the

---

[19] Contractual exculpatory clauses absolve the exculpated party only from ordinary negligence and do not shield defendants from liability for gross negligence or intentional misconduct, or the like. *Royal Ins. Co. of America v. Southwest Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999)

24

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

coronavirus, and care; and/or

b.  Failure to adequately warn passengers before boarding the vessel that a passenger on a prior cruise showed symptoms of the coronavirus; and/or

c.  Failure to warn passengers of the dangers and risks of the coronavirus and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

d.  Failure to adequately warn passengers before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak onboard the *Ruby Princess*; and/or

e.  Failure to adequately warn passengers on the subject voyage aboard the *Ruby Princess* that a passenger on a prior voyage who showed symptoms of the coronavirus tested positive for the coronavirus before boarding the vessel; and/or

f.  Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

g.  Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

h.  Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

i.  Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

j.  Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

k. Failure to adequately quarantine passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

l. Failure to adequately quarantine passengers and/or crewmembers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

m. Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

n. Failure to serve uncontaminated food; and/or

o. Failing to practice safe and sanitary food practices; and/or

p. Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the *Ruby Princess*; and/or

q. Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on prior cruise voyages; and/or

r. Failure to take adequate medical precautions when a passenger is exhibiting symptoms of the coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

s. Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

t. Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of the coronavirus and/or virus and/or infectious disease; and/or

u. Failure to provide a sanitary vessel to prevent outbreaks of the

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

coronavirus and/or virus and/or infectious diseases, including, but not limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

v.    Failure to take adequate steps to contain the spread of the coronavirus and/or virus and/or infectious diseases, which it knew or should have known could cause other dangerous medical conditions; and/or

w.    Knowingly refusing to cancel and/or offer refunds to passengers as a result of a passenger on a prior cruise showing symptoms of coronavirus; and/or

x.    Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious coronavirus due to a passenger on a prior cruise showing symptoms of coronavirus; and/or

y.    Failing to cancel the voyage and/or offer refunds despite knowing a passenger on a prior voyage showed symptoms of the coronavirus and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

z.    Failure to reasonably offer refunds to passengers not wishing to travel on a vessel that had a passenger from a previous voyage showing symptoms of the coronavirus; and/or

aa.   Exposing passengers to unsanitary conditions that they were unprepared for without proper warning from Defendant; and/or

bb.   Failure to provide adequate training, instruction, and supervision to the Defendant employees; and/or

cc.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

dd. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an outbreak of a virus and/or infectious disease, including , but not limited to, the coronavirus; and/or

ee. Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet, in common areas of the vessel; and/or

ff. Knowing, as a result of previous similar incidents and/or passengers showing symptoms of the coronavirus, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

gg. Failure to amend its cancellation policy to allow the passengers to cancel their cruise without financial penalty in light of a passenger from a previous voyage showing symptoms of the coronavirus and/or the significant actual risk due to the coronavirus global pandemic;

hh. Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

81. The above acts and/or omissions caused and/or contributed to Plaintiffs and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the Plaintiffs and others similarly situated would not have boarded the vessel knowing that a passenger on the prior voyage showed symptoms of the coronavirus that Defendant were aware of, had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to Plaintiffs and others similarly situated.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

82.    In addition, the above acts and/or omissions caused and/or contributed to Plaintiff and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the Plaintiff and others similarly situated would have disembarked the vessel in Napier, New Zealand knowing that passengers on the subject voyage were showing symptoms of the coronavirus had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to Plaintiffs and others similarly situated.

83.    The above acts and/or omissions caused and/or contributed to the Plaintiffs and others similarly situated contracting the coronavirus and/or other virus and/or medical complications arising from it because the coronavirus and/or other virus outbreak would not have occurred but for Defendant's failure to adequately sanitize the vessel in a reasonably safe condition.

84.    At all material times, Defendant had exclusive custody and control of the vessel, *Ruby Princess*.

85.    Defendant knew of the foregoing conditions causing Plaintiffs and others similarly situated to be exposed to an actual risk of physical injury and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

86.    As a result of the negligence of Defendant, Plaintiffs and others similarly situated were:

a.    exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

nightmares, and respiratory difficulties; and/or

b.    contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff and others similarly situated will suffer the losses and impairments in the future.

WHEREFORE the Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

### COUNT II – NEGLIGENT INFLICTION OF
### EMOTIONAL DISTRESS AGAINST DEFENDANT

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 77, and alleges as follows:

87.    At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs and all others similarly situated were placed in an immediate risk of physical harm.  Said risk of physical harm included but is not limited to: contracting the coronavirus and/or virus and/or medical complications arising from it and/or injury and/or death and/or severe emotional and/or psychological trauma.

88.     Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs and all others similarly situated, such as fear and anxiety, including, but not limited to, of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

89.     Plaintiffs and those similarly situated was/were forced to remain on a vessel that had multiple passengers that tested positive of coronavirus and were on the vessel for multiple days, and were then forced to disembark the vessel in tight groups, without adequate personal protective equipment, including masks and gloves, creating an actual risk of exposure to coronavirus, causing a reasonable fear of great bodily harm and death. At all times material, all similarly effected passengers were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the highly contagious coronavirus, which had and has no vaccine.

90.     Plaintiffs and those similarly situated ticketed aboard the *Ruby Princess* were placed in the zone of danger as a result of Defendant's dangerously lackadaisical approach in dealing with the coronavirus that was known to be on board the vessel via passengers on a prior voyage that tested positive for the coronavirus.  Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

91.     Plaintiffs and others similarly situated fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiffs and others similarly situated suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Defendant. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs and others similarly situated, including but not limited to insomnia, depression,

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

anxiety, nightmares, and dizziness.

92.     As a result of the negligent inflection of emotional distress by Defendant, Plaintiffs and others similarly situated were:

a.     exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.     contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs and others similarly situated will suffer the losses and impairments in the future.

WHEREFORE the Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

## COUNT III - INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS AGAINST DEFENDANT

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 77, and alleges as follows:

93.    As set forth above, the actions of Defendant were intentional or reckless and inflicted mental suffering.  Defendant's conduct in *inter alia*, (a) deciding to proceed with a 14-day cruise on March 8, 2020, knowing at least one of its passengers from the prior voyage had symptoms of coronavirus; (b) deciding to conceal from passengers at any time prior to boarding and/or while they were already onboard that there were  passengers on the prior voyage with symptoms of the coronavirus and/or other passengers with symptoms of the coronavirus on the subject voyage; and (c) deciding to not quarantine passengers knowing passengers on the prior voyage tested positive for COVID-19 and/or knowing passengers on the March 8, 2020 cruise were experiencing symptoms of COVID-19.  This conduct is made more outrageous by the fact that this conduct was motivated by Defendant's desire to make profit rather than ensure the reasonable safety and welfare of its passengers.

94.    Defendant's conduct caused the Plaintiffs and others similarly situated, and all those similarly situated, to suffer through the fearful conditions alleged above.

95.    All of the conditions previously alleged and endured by the Plaintiffs and others similarly situated caused severe suffering and emotional distress as these conditions not only led to immediate risk of physical harm but also caused severe discomfort, anxiety, feelings of helplessness/hopelessness.

96.    The conduct of Defendant as alleged above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Put simply, Defendant recklessly and intentionally put thousands of its passengers through a living nightmare so it could protect its bottom line.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

97.     As a result of the intentional inflection of emotional distress by Defendant, Plaintiffs and all those similarly situated were:

a.     exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.     contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs and others similarly situated will suffer the losses and impairments in the future.

WHEREFORE the Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## Prayer for Relief

WHEREFORE, the Plaintiffs and all others similarly situated respectfully request the Court enter judgment in their favor and against the Defendant as follow:

1.   To enter an order certifying the proposed Class pursuant to Fed. R. Civ. P. Rule 23(a), (b)(1-3), and/or (c)(4), designating Plaintiffs as named representative of the Class and designating the undersigned as Class Counsel;

2.   To enter judgment in favor of the Plaintiffs against Defendant on all causes of action as alleged herein;

3.   To award compensatory damages in the amount to be ascertained at trial;

4.   To award punitive damages, as permitted by law;

5.   To award costs of suit, as permitted by law;

6.   For prejudgment interest according to proof; and

7.   To enter such other and further relief as the Court deems just under the circumstances.

LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.

DATED:   June 4, 2020.

BY: *s/ Carol L. Finklehoffe*

CAROL L. FINKLEHOFFE
*Attorney for Plaintiffs*

## Demand for Jury Trial

Plaintiffs hereby demands a trial by jury on all claims for relief.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

DATED:   June 4, 2020.

LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.


BY: *s/ Carol L. Finklehoffe*
       CAROL L. FINKLEHOFFE
       *Attorney for Plaintiffs*

Plaintiff's Class Action and Individual Complaint and Demand for Jury Trial

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204